JH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
NOV 21, 2006
NOV 2 1 2006

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

RICHARD CARLSON,

          Plaintiff,

v.

GENERAL SERVICES
ADMINISTRATION,

          Defendant.

Case No. 04 C 7937

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendant General Services Administration (hereinafter, "GSA") moves for Summary Judgment on Plaintiff David Carlson's (hereinafter, "Carlson") claims that GSA violated the Privacy Act ("the Act"), 5 U.S.C. § 552, *et seq*. For the reasons discussed below, GSA's Motion for Summary Judgment is **granted in part and denied in part**.

### I. FACTUAL BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions. Because this is a summary judgment motion, all reasonable inferences are settled in the non-movant's favor.

Carlson was employed by GSA for approximately 23 years. In 2002, David Hood ("Hood") became his supervisor. Between 2002 and 2003, Carlson filed an informal complaint stating that Hood was errant in his supervisory responsibilities. Prior to 2002, Carlson

supervised Hood's wife. During that time, Carlson filed a complaint regarding Ms. Hood's travel practices.

In April 2003, Carlson traveled to Texas for a GSA conference. On his way to the conference, Carlson was detained and questioned regarding prescription medication bottles found in his luggage. He was arrested for possession of marijuana and a controlled substance. After he was arrested, Carlson spent a night in jail and was forced to change his travel plans. He continued to the conference on the following day. He called a supervisor to inform him that he had been delayed but did not inform him of the reason.

An order of *Nolle Prosequi* was entered with respect to the charges filed against Carlson. In May 2003, the Federal Bureau of Investigation (the "FBI") learned of the arrest and notified the Office of Personnel Management (the "OPM"). OPM contacted GSA and directed it to conduct an investigation into the matter. Hood and another supervisor, Norb Kieszkowski ("Kieszkowski"), were responsible for conducting the investigation.

As part of the investigation, Hood and Kieszkowski interviewed several individuals including Harvey Florian ("Florian") of the GSA's Inspector General's Office. In his interview, Florian summarized what was included in the FBI report. Hood and Kieszkowski also reviewed the travel vouchers that Carlson submitted for the trip, and his time and attendance records. Hood signed a register stating that he had reviewed the FBI investigative report on June 6, 2003. The investigative report

states, "You are responsible for protecting the file from unauthorized disclosure, as required by the Privacy Act of 1974."

After reviewing the records and interviewing individuals with relevant information, Hood and Kieszkowski interviewed Carlson. The details of the interview are disputed. Carlson claims that he requested to confer with his attorney before answering questions regarding the arrest but returned thirty minutes later and provided the requested information. He also claims that Hood was generally hostile and abusive during the interview.

As a result of the investigation, Hood and Kieszkowski recommended that Carlson be terminated. The recommendation was based on their finding that Carlson had provided false information on his travel vouchers, failed to report his time and attendance, failed to cooperate during the investigation and committed misconduct "which impairs the trustworthiness of a GSA manager." Carlson disputed the basis for his termination. As such, he responded to the termination notice in writing and appealed his termination to the Merit Systems Protect Board (the "MSPB").

On February 24, 2004, a settlement agreement was reached in which GSA agreed to pay Carlson approximately $80,000 to release his wrongful termination claims. The same day, Hood sent an e-mail to various GSA employees concerning Hood's termination and settlement. The subject of the e-mail was "Carlson settlement-final." In the e-mail, Hood stated, "I wanted you to feel free to share with others. . . ."

The e-mail contained an attachment, entitled, "Carlson settlement announcement." It read in part:

> **Richard Carlson matter - important but somber announcement.**
>
> . . . 2. Carlson now gone for good. 3. My primary objective achieved - he's gone & never returns.
>
> **As deciding official, my personal & official conclusions as to facts:**
>
> (1) 4/14/03 Carlson carried 4 grams of marijuana to O'Hare airport while on duty and TDY arrest; (2) Detected by TSA; (3) Arrested by Chicago PD; (4) Jailed overnight at Cook County jail with violent perverts & thugs; (5) By his own account, trembled all night as he witnessed others being beaten & sexually assaulted; (6) Arraigned in circuit court next day; (7) Released on own recognizance . . . (8) Did not report incident to any manager or superior, (9) Instead risked GSA's customer business and reputation, as well as public trust: he returned to O'Hare airport . . . (14) 5/6/03- appeared in court; county prosecutor *nolle presequi* . . . (17) FBI discovered arrest; (18) Reported to OPM. . . .
>
> **Settlement decision:**
>
> . . . (5) Final deal: Carlson gets about $46K, plus attorney fees, again, over $30K - Total $80K; (6) Also clean paper resignation. . . .
>
> **Irony or tragedy:**
>
> . . . (8) forced into retirement before he's ready & for minimum annuity; (9) and lost $100Ks income for all the rest of his life.

Pl. Ex. 8.

Hood claims that he prepared the e-mail while on vacation and did not use any documents or records. Rather, he contends that he

- 4 -

relied upon his recollection of his understanding of the case, primarily coming from his interviews during the investigation. Carlson contends that the information surrounding his arrest, FBI report, investigation and settlement agreement were all maintained by GSA in his personnel file.

Hood claims that he wrote the e-mail to deter future conduct that would result in the same discipline and to dispel incorrect rumors that Carlson was being investigated for bribery. He expected his associates to discuss the matter with their staff. The e-mail was also forwarded to individuals outside of GSA. Carlson received the e-mail from Jeffrey Meyer, a former GSA employee. Since learning of the disclosure of the e-mail, Carlson has been diagnosed with chronic clinical depression. GSA employees testified that they had never received similar correspondence describing facts or settlements surrounding a termination or a settlement.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must view all the evidence and any reasonable inferences therefrom

in the light most favorable to the nonmoving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the Court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

### B. Privacy Act

In the Privacy Act of 1974 and its subsequent amendments, Congress imposed restrictions on the ability to disclose certain information on individuals. 5 U.S.C. § 552a(b). At issue here is the bar on unauthorized disclosures:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains. . . .

5 U.S.C. § 552a(b). If an agency, acting intentionally or willfully, violates this command "in such a way as to have an adverse effect on an individual," Congress has authorized the filing of a civil action for damages by the affected individual. 5 U.S.C. § 552a(g)(1). Both "actual damages sustained by the individual and statutory minimum damages of $1,000 are available, along with attorney's fees." 5 U.S.C. § 552a(g)(4).

The key elements of a cause of action under the Privacy Act for damages for disclosure are: (1) agency disclosure (by any means of communication); (2) to an individual or another agency; (3) of a "record" contained in a "system of records"; (4) which is unauthorized by the individual; (5) which is not within an exception; (6) an adverse effect on the individual, which contains two components (I) an adverse standing component and (ii) a casual nexus between the disclosure and the adverse effect; and (7) that the agency action be in a manner which was "intentional" or "willful." See 5 U.S.C. § 552a; Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992). The Privacy Act prohibits more than dissemination of records themselves, but also "nonconsensual disclosure of any information that has been retrieved from a protected record." Bartel v. F.A.A., 725 F.2d 1403, 1408 (D.C. Cir. 1984).

### 1. E-mail was Contained in a System of Records

GSA argues that Carlson cannot prove that the e-mail was contained within a "system of records" such that: (1) it was

capable of being accessed using his name or other identifier, and (2) that the GSA has a practice of accessing such e-mail. Carlson is not, however, contending that the e-mail was a record contained within a system of records. Rather, Carlson argues that the information contained in the e-mail, including his criminal history and settlement information, is contained in a record. Specifically, Carlson argues that the information concerning the investigation and the settlement were all contained within his personnel file. The personnel file exists within a system of records at GSA. The e-mail was not a record itself within a system of records, rather, it was the "means of communication" by which the information was disseminated.

GSA also argues that because the e-mail contains information that is also contained in a record that does not suffice to make it actionable. Rather, the information must have been retrieved from a record within a system of records. *See Henke v. U.S. Dept. of Commerce*, 83 F.3d 1453, 1461 (D.C. Cir. 1996). In this case, GSA contends that Hood compiled the e-mail from his own memory and did not "retrieve" any of the information from a record. Thus, it contends, the Act does not apply to the facts of this case.

Carlson cites *Bartel v. F.A.A., et al.*, 725 F.2d 1403 (D.C. Cir. 1984). The issue in *Bartel* was whether there could be a violation of the Privacy Act without the disseminating individual actually retrieving the information disseminated from a record

contained in a system of records. The D.C. Circuit answered this question in the affirmative. The court stated that the Act could be applied to a "disclosure by an agency official of his official determination made on the basis of an investigation which generated a protected personnel record" even if the agency official had not actually retrieved the information from a record. *Id.* at 1409. If this were not the case, the court said, government officials could disclose a plethora of protected information without violating the Act. *Id.* at 1411 n.15. Under *Bartel*, therefore, it is possible for a court to find a violation of the Act even if the individual disseminating the information did not retrieve the information from a record contained in a system of records.

Under *Bartel*, Carlson's claim is actionable. Similar to the facts in *Bartel*, Hood disclosed information he derived from his investigation that resulted in a record under the Act. Thus, the information contained in Hood's e-mail constituted "communication" of a protected "record."

### 2. The "Need to Know" Exception

GSA argues that even if the e-mail was a communication of a protected record, the Act permits disclosures "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). GSA contends that Hood sent the e-mail to GSA managers to inform them of the reasons for Carlson's termination in

order to deter such conduct in the future and to dispel untrue rumors.

Carlson argues that dissemination of the e-mail was encouraged without any restrictions. As a result, the e-mail was forwarded to individuals outside the GSA who clearly did not have a need to know its information. In addition, Hood included details that were not necessary to achieve deterrence or dispel rumors. Further, Carlson submitted affidavits of GSA employees stating they had never received similar correspondence regarding termination or discipline of a GSA employee.

In support of their argument, GSA cites three cases, all of which are distinguishable from the facts of this case. In *Mount v. U.S. Postal Service*, 79 F.3d 531 (6th Cir. 1996), the Court concluded that disclosure of information within plaintiff's medical records to persons with disciplinary and management responsibilities was necessary in light of questions surrounding plaintiff's mental stability given his continued presence. In *Hannah v. Herman*, 121 F.Supp.2d 113, 123 (D.C. 2000), the supervisor discussed a planned disciplinary action against plaintiff with **one** other supervisor within the agency. In addition, the plaintiff had publicly discussed the circumstances surrounding the disciplinary action. *Id.* at 124. Finally in *Viotti v. U.S. Air Force*, 902 F.Supp 1331, 1337 (D. Col. 1995), a defendant disclosed that he was demoting the head of the political

science department because of lack of confidence in leadership skills to the department staff. The court held that the disclosure fell within the need to know exception because it involved personnel matters of the department. *Id.*

Hood's e-mail is distinguishable from the above cases in that he sent the disclosure to approximately sixteen people and encouraged them to share it without restriction. He stated, "I wanted you to feel free to share with others. . . ." Hood did not restrict the dissemination of the e-mail to those who arguably needed to know. The disclosure also differs from the above-cited cases in its details and in its tone. In the e-mail, Hood expresses his personal satisfaction with Carlson's termination stating that Carlson was "gone for good" and Hood's "primary objective [was] achieved - he's gone & never returns." He also stated that Carlson "knew the truth, maybe his family knows . . . that he betrayed his former friends & colleagues: [t]ried to harm their reputations to save his own neck at any price."

Based on the above factors, a reasonable jury could find that the disclosure does not fall within the need to know exception of the Act.

### 3. *Intentional or Willful Violation of the Act*

To recover under the Act, Carlson must show that GSA acted "intentionally" or "willfully." *Moskiewicz v. U.S. Dept. of Agriculture.* 791 F.2d 561, 563 (7th Cir. 1986). "On a continuum

between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence." *Id.* Evidence of conduct which would meet the greater than gross negligence standard should focus on evidence of reckless behavior and/or knowing violations of the Act. *Id.* (granting defendants motion for summary judgment because both sides presented legitimate evidence which could lead them to conclude that their positions were correct.)

GSA argues that this standard is not met because the e-mail was sent to alert employees of the consequences of certain conduct and to dispel rumors. Carlson argues that this was the only e-mail of its kind to be sent describing a termination and settlement. In addition, Hood signed a letter forwarding the FBI report containing the relevant information stating, "You are responsible for protecting the file from unauthorized disclosure, as required by the Privacy Act of 1974." Thus, Carlson concludes that when Hood disclosed the information via the e-mail, he knowingly violated the Act.

Resolving all reasonable inferences in Carlson's favor, the Court finds that there is an issue of fact as to whether the conduct at issue here meets the standard for willfulness under the Act. Hood did not limit the distribution of the e-mail. Instead, he encouraged its dissemination without restriction. Hood and Carlson had contentious interactions in the past. Arguably

unnecessary details concerning Carlson's personal information were included in the e-mail. Given these factors, coupled with the tone of the e-mail, a reasonable jury could conclude that the e-mail was sent in reckless disregard of Carlson's rights under the Act.

### 4. Requirement that Carlson be Interviewed First

Carlson claims that GSA violated the Privacy Act by not interviewing him first when GSA conducted its investigation. In order prove his claim under Section 552a(e)(2) of the Act, Carlson must show that (1) the agency failed to collect information to the greatest extent practicable directly from Carlson; (2) the violation had an adverse effect on him; and (3) GSA acted in an intentional and willful manner. 5 U.S.C. § 552a(e)(2).

Carlson cites *Waters v. Thornburgh*, 888 F.2d 870 (D.C. Cir. 1989), in support of his argument that doubts about his credibility do not translate into impracticability under the Act. *Waters* held that in the context of seeking objective, unalterable information, reasonable questions about a subject's credibility cannot relieve an agency from its responsibility to collect that information first from the subject. *Id.* at 873.

GSA argues that Carlson cannot prove it acted unreasonably in not interviewing him first. The investigators collected facts from the inspector general's office and reviewed the available documentary evidence. According to GSA, Carlson was not cooperative during the interview. He admittedly did not want to

answer their questions without first consulting his attorney. In addition, GSA argues that Carlson deliberately hid the arrest from GSA, thus he should be precluded from arguing that it should have interviewed him before collecting information from other sources.

Subsection (e)(2) was designed to "discourage the collection of personal information from third party sources and therefore to encourage the accuracy of Federal data gathering." *Waters*, 888 F.2d at 874. Generally, courts consider whether the individual subjection to investigation could compromise the accuracy of the information. *See Thompson v. Department of State*, 400 F.Supp.2d 1, 9 (D.C. 2005); *see also Brune v. I.R.S.*, 861 F.2d 1284, 1287 (D.C. Cir. 1988)(holding it was not practicable to obtain the information directly from IRS agent suspected of making false statements on travel vouchers because he was in a position to alter information). The Court concludes that GSA sought information directly from Carlson "to the extent practicable" as required by § 552a(e)(2). The issues under investigation in this case could not have been resolved by objective evidence within Carlson's possession. The allegations centered around an arrest that Carlson allegedly hid from his employer. Thus, he could not have satisfactorily confirmed or denied the allegations. Moreover, the order of the interviews would not have altered the investigation's impact on Carlson's reputation. *See Thompson*, 400 F. Supp. 2d at 10. If it is "impracticable" to seek information directly from an employee,

some tarnishing of the employee's reputation may be inevitable. *Id.*, citing, *Brune* 861 F.2d at 1287-88. The Act does not require the agency to undertake a piecemeal investigation by obtaining objective evidence first and then interviewing third party witnesses as to the more subjective claims. *Cardamone v. Cohen*, 241 F.3d 520 (6th Cir. 2001)(court may consider practical considerations in deciding whether to interview individual first). Furthermore, Carlson has not presented evidence that approaching him first would have allowed GSA to better ascertain the truth. *Id.* Although GSA did not interview Carlson first, he was given a chance to respond to the allegations. Thus, summary judgment is granted on Count IV.

### III. CONCLUSION

For the reasons stated herein, GSA's Motion for Summary Judgment **is Granted in Part and Denied in Part.**

GSA's Motion for Summary Judgment is granted with respect to Count IV. The remainder of the Motion is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: November 21, 2006

- 15 -